IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

AUTUMN S.,

      **Plaintiff,**

  v.                                    Civil Action 2:24−cv−03878
                                            Judge Sarah D. Morrison
                                            Magistrate Judge Kimberly A. Jolson

COMMISSIONER OF
SOCIAL SECURITY,

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Autumn S. brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the following reasons, the Undersigned **RECOMMENDS** that the Court **SUSTAIN** Plaintiff's Statement of Errors (Doc. 10), **REVERSE** the Commissioner of Social Security's non-disability finding, and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

**I.    BACKGROUND**

Plaintiff filed her applications for DIB and SSI in August 2021, alleging disability beginning July 31, 2020, due to aggravated depression, severe anxiety, agoraphobia, and seizures. (R. at 566−72, 573−80, 598). After her applications were denied initially and on reconsideration, Administrative Law Judge Noceeba Southern (the "ALJ") heard the case on April 5, 2023. (R. at 117−35). Ultimately, the ALJ denied Plaintiff's applications in a written decision on August 22, 2023. (R. at 19−41). The Appeals Council denied Plaintiff's request for review, making the ALJ's ruling the Commissioner's final decision. (R. at 1–7).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on August 23, 2024. (Doc. 1). As required, the Commissioner filed the administrative record, Plaintiff filed a statement of errors, and the Commissioner filed a response. (Docs. 7, 10, 12). No reply was filed, and the matter is ripe for consideration.

A. **Relevant Hearing Testimony and Statements to the Agency**

When discussing the "paragraph B" criteria, the ALJ summarized Plaintiff's statements to the agency as follows:

> [Plaintiff] reported when she gets upset, she is not able to remember things well, is easily distracted, and sometimes is not able to understand what others are explaining (Exhibit B3E). During a psychological consultative examination, [Plaintiff]'s mental functioning was found to be completely intact with the exception of several instances of poor effort in assessment of her working memory. Her immediate, recent, and remote memory appeared intact. She exhibited a clear lack of effort at tasks appearing to give up easily. She reported in past jobs she understood directions (Exhibit B22F). During a neuropsychological evaluation, [Plaintiff]'s memory performance varied by task. [Plaintiff]'s neuropsychological profile reflected deficits across selected measures of attention and memory (Exhibit B28F/4). [Plaintiff] reported difficulty going out in public without having a panic attack. She noted that she texts with others and occasionally goes to get coffee or sits at home with others and chats. [Plaintiff] reported that she hates her sisters, is afraid of people, and she really does not like people (Exhibit B3E). During the consultative examination, [Plaintiff] denied talking to neighbors and friends and has trouble with authority figures. She did not report relationship issues with supervisors or coworkers in the past but noted having been arrested for charges including assault, domestic violence, domestic menacing, and complicity to theft (Exhibit B22F). [Plaintiff] generally presents as calm, pleasant, and cooperative (Exhibits B23F/71, 46; B25F/61; B30F/10; B33F/27, 60). Although, at times, she is irritable and agitated (Exhibits B23F/177; B24F/6; B25F/101; B36F/99). [Plaintiff] reported that she follows directions "pretty well", but she must go over them many times. She indicated that she does not follow spoken instructions well without having them repeated more than once. [Plaintiff] reported being unable to pay attention for long noting that she will "zone out" (Exhibit B3E). The consultative examiner noted that [Plaintiff] appeared attentive, and her concentration seemed intact. She was able to attend throughout the examination and did not appear to have difficulty with focus (Exhibit B22F). Treatment notes reflect [Plaintiff]'s report that cannabis helps her with concentration (Exhibit B33F/49). During the consultative examination, [Plaintiff] reported her mood as depressed and anxious most of the time. She stated that she gets upset very and overwhelmed very easily and does not know how to calm herself down. While she reported feeling anxious, she did not exhibit overt behavioral manifestations of anxiety. Her

2

> speech was clear and understandable, and she did not have any problems expressing herself. Her thought processes appeared generally clear, linear, organized, and goal directed. The consultative examiner noted that [Plaintiff] did not appear to have any deficits in her performance of activities of daily living secondary to her mental health (Exhibit B22F). Mental health treatment notes indicate that through medication management and therapy, [Plaintiff]'s ability to handle stressors has improved (Exhibits B23F/60, 122, 132, 137; B36F/15, 37; B37F/24, 84). [Plaintiff] typically presents as neatly groomed in appropriate attire (Exhibits B23F/68, 77, 87; B24F/6; B28F/3). She testified that she has no issues the ability to care for her seven-year-old daughter.

(R. at 27–28).

The ALJ summarized Plaintiff's testimony from the administrative hearing as follows:

> [Plaintiff] testified to, or elsewhere indicated an inability to work primarily due to mental health problems. She testified that she is terrified of people and has panic attacks when she goes out in public. She stated that she gets mad at everyone, and she does not leave the house unless it is completely necessary. She stated that she can only be in a grocery store for 15 minutes before panic sets in. [Plaintiff] testified that she does not trust anyone even her friends, and she feels uncomfortable around everyone. [Plaintiff] stated that she experiences memory problems and forgets everything. She said she has dreams she thinks are real and experiences real things she thinks are dreams. She testified that she is not good at keeping things in order and forgets where she puts things noting that she leaves herself reminder notes. She testified that she either sleeps too much or not enough. [Plaintiff] stated that she has panic attacks triggered by different things causing her to cry, feel dizzy and confused, short of breath, and shaky, which can last 10 minutes up to an hour or more depending on the situation and the trigger.

(R. at 29).

### B. Relevant Medical Evidence

The ALJ summarized Plaintiff's medical records and symptoms related to her mental health issues as follows:

> Since the prior ALJ decision, the record documents ongoing mental health treatment with good response to medication and therapy (Exhibits B23F; B36F; B37F). Treatment notes document that in 2020, [Plaintiff] made progress setting boundaries with family member and her partner, reduced the amount of conflict with others, and was better able to manage stress (Exhibit B23F/60). While [Plaintiff] reported feeling overwhelmed, stressed, and anxious in relation to situational stressors such as housing issues, concern over her father's health, family deaths, and divorce, it is often noted that [Plaintiff] has been doing well overall and handling things better than in the past (Exhibit B23F/122, 132, 137).

3

>[Plaintiff] did seek evaluation for increased forgetfulness and memory issues following motor vehicle accidents, as well as complaints of spells of altered consciousness. In July 2021, [Plaintiff] presented to the emergency room with symptoms consistent with concussion. A head CT showed no intracranial abnormality. (B25F/102, 116). Upon neurologic evaluation, [Plaintiff]'s work−up was completely normal (Exhibits B21F; B24F). While she presented with concern of seizure activity following a subsequent motor vehicle in March 2022, with what she described as episodes of amnesia, it was noted that such symptoms were not typical for seizures.
>
>The neurologist noted that [Plaintiff]'s history of marijuana use and alprazolam may contribute to amnesia with sedation (Exhibit B24F/2−3). [Plaintiff] was ultimately referred for a neuropsychological evaluation for her reported issues with short term memory and amnesia (Exhibit B25F/317−319). The examiner noted that [Plaintiff]'s comprehension of simple instruction was reliable, but she was easily overwhelmed with more complex task instructions. Her thought processes were generally goal-directed though often tangential. Her insight was fair to poor, and her mood was dysphoric with congruent affect (Exhibit B28F/3). In the context of average estimated baseline intellectual functioning, [Plaintiff]'s performance fell in the expected range across various measures. Some of [Plaintiff]'s performance was, however; below average. The examiner noted that based on the entirety of [Plaintiff]'s performance her neuropsychological profile reflected deficits across select measures of attention and memory and her scores met criteria for diagnosis of mild neurocognitive disorder with uncertain etiology with her psychiatric symptoms as a likely contributor (Exhibit B28F/4). During psychological consultative examination, [Plaintiff]'s mental functioning was found to be completely intact without the exception of several instances of poor effort in the assessment of working memory (Exhibit B22F/11). [Plaintiff]'s mental status examination findings routinely indicate linear, coherent, and goal directed thought process, intact insight, and judgment, as well as cooperative behavior (Exhibits B36F, B37F).
>
>\*\*\* [Plaintiff] testified that she has no issues with caring for her young daughter and mental health treatment notes document her report of "strongly considering taking temporary custody of friend's children" (Exhibit B37F/84). Overall, the record documents good response to treatment and [Plaintiff]'s reports of stable symptomology. She indicated that she believed her mental health medication was working well and noted that her main issue related to situational stressors indicating that she does not react well to things (Exhibit B22F/5). \*\*\*

(R. at 30−31).

C.  The ALJ's Decision

Up front, the ALJ found that Plaintiff meets the insured status requirement through September 30, 2021. (R. at 25). And she has not engaged in substantial gainful activity since July 31, 2020, the alleged onset date. (*Id.*). The ALJ also determined that Plaintiff has the following severe impairments: migraine headaches; seizure disorder; mild cognitive disorder; status−post concussion; schizoaffective disorder/bipolar disorder, and anxiety disorder. (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, meet or medically equal a listed impairment. (*Id.*).

The ALJ assessed Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, [the ALJ] finds that the [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] should avoid climbing ladders, ropes, or scaffolds and concentrated exposure to extreme cold and extreme heat, noise, vibration, fumes, odors, dusts, gases, and areas with poor ventilation. She must avoid all exposure to hazards with no exposure to hazardous machinery, commercial driving, or unprotected heights. [Plaintiff] is able to perform simple routine tasks consistent with unskilled work, with no fast pace or high production quotas, with no direct work with the general public, and only superficial interaction (defined as a short duration for a specific purpose) with co-workers and supervisors. [Plaintiff] is able to perform work with few detailed instructions, infrequent changes that are well-explained, and is able to perform low stress work, meaning no arbitration, negotiation, responsibility for the safety of others, or supervisory responsibility. [Plaintiff] would be off task five percent of the workday.

(R. at 28).

The ALJ determined that Plaintiff has no past relevant work. (R. at 32). The ALJ relied on testimony from a Vocational Expert ("VE") to determine that given Plaintiff's age, education, work experience and RFC, she was able to perform work that existed in significant numbers in the national economy, such as an order picker, janitor, or hand packager. (R. at 33). Consequently,

5

the ALJ concluded that Plaintiff was not disabled during the relevant timeframe. (*Id.*).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13−cv−1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

In her Statement of Errors, Plaintiff contends that the ALJ erred in her RFC determination by not properly evaluating the medical source opinion of psychologist, Susan Rowland, Ph.D. (Doc. 10 at 14–16). Plaintiff also argues the ALJ erred at step two by failing to find Plaintiff's chronic back pain associated with mild lumbar spine facet arthropathy as a severe impairment. (*Id.* at 16−18). The Commissioner maintains that the ALJ properly evaluated Dr. Rowland's opinion under the regulations and did not err at step two. (Doc. 12 at 4−12).

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from [her] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). When determining the

RFC, the ALJ must evaluate several factors, including medical evidence, medical opinions, and the plaintiff's testimony. *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)). In doing so, the ALJ must resolve conflicts in the record. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). To that end, an ALJ "is only required to include in the residual functional capacity those limitations he finds credible and supported by the record." *Beckham v. Comm'r of Soc. Sec.*, No. 1:19-cv-576, 2020 WL 5035451, at *7 (S.D. Ohio Aug. 26, 2020) (quoting *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 170 (6th Cir. 2020)). And an ALJ is not required to adopt a medical opinion verbatim. *See, e.g.*, Poe, 342 F. App'x at 157 ("Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding.").

Neither is an ALJ required to adopt an opinion in full merely because she finds it persuasive. *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale."). Still, "where an ALJ finds expert opinions to be persuasive, he may not decline to incorporate those opinions into an agency decision without explanation." *Jessica A. v. Comm'r of Soc. Sec.*, No. 3:24-CV-232, 2025 WL 689384, at *1 (S.D. Ohio Mar. 3, 2025) (citing *Wood v. Comm'r. of Soc. Sec.*, No. 3:18-CV-76, 2019 WL 1614591, at *3 (S.D. Ohio Apr. 16, 2019), *report and recommendation adopted*, No. 3:18-CV-76, 2019 WL 1958663 (S.D. Ohio May 2, 2019)); *see also Michelle B. v. Comm'r of Soc. Sec. Admin.*, No. 2:23-CV-4222, 2025 WL 296321, at *5 (S.D. Ohio Jan. 24, 2025) (collecting cases). In the end, the ALJ's opinion—read as a whole—must build a logical bridge between the evidence and the ALJ's

conclusions. *Davis v. Comm'r of Soc. Sec.*, No. 2:19-CV-265, 2019 WL 5853389, at *5 (S.D. Ohio Nov. 8, 2019), *report and recommendation adopted*, No. 2:19-CV-265, 2020 WL 1482318 (S.D. Ohio Mar. 27, 2020) (quoting *Waye v. Comm'r of Soc. Sec.*, No. 1:18-CV-201, 2019 WL 364258, at *5 (S.D. Ohio Jan. 30, 2019), *report and recommendation adopted*, No. 1:18CV201, 2019 WL 718542 (S.D. Ohio Feb. 20, 2019)).

Against that background, Plaintiff takes aim at the ALJ's treatment of Dr. Rowland's opinion. On March 29, 2022, Dr. Rowland evaluated Plaintiff for her claim for mental disability benefits. (R. at 3264−78). On a mental status examination, Dr. Rowland reported Plaintiff exhibited reliable comprehension of simple instructions but was easily overwhelmed with more complex task instructions. (R. at 3272−73). She had goal-directed and tangential thought processes, fair to poor insight, and a dysphoric mood with congruent affect. (*Id.*). Dr. Rowland also noted that Plaintiff had completely intact mental functioning, except for several instances of poor effort in the working memory assessment. (R. at 3273).

After evaluating Plaintiff and examining several relevant medical records, (R. at 3265–66), Dr. Rowland assessed Plaintiff with major depressive disorder, histrionic personality disorder, borderline personality disorder, antisocial personality disorder, and cannabis use disorder. (R. at 3275). In relevant part, Dr. Rowland opined that:

> Under the right employment circumstances with simple instructions where she could work under a trusted supervisor (not multiple supervisors) in a relatively socially isolated environment with limited interactions with others and the general public, it is expected that [Plaintiff] would not have significant limitations in her ability to conform to social expectations and appears capable of managing at least basic tasks and interactions.
>
> ***[Plaintiff] exhibits the ability to sustain concentration and persist in work-related activities at a reasonable pace. [Plaintiff's] anxiety may provide her with challenges secondary to a lack of adequate coping skills, however. Therefore, she would benefit significantly from learning appropriate coping strategies or at least

> being permitted to take additional short breaks while at work if mental health symptoms worsen.
>
> \*\*\*[Plaintiff's] purported anxiety around people may compromise her ability for effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public. But she was able to attend her appointment for this examination and appropriately interacted with me and other office personnel. Thus, [Plaintiff] appears to have enough of an ability to maintain effective social interactions with supervisors, co-workers, and the public. However, given her purported anxiety around people, she might perform better should she be motivated enough to find a position with simple instructions where she could work under a trusted supervisor (not multiple) in a relatively socially isolated environment with limited interactions with others and the general public.
>
> \*\*\*Her purported anxiety around others may lead her to have difficulties working in a setting with others in a fast-paced environment performing complex tasks with other co-workers, however. She may perform better, therefore, in a work environment where she has limited contact with other co-workers and the public under a consistent (not multiple), trusted supervisor accomplishing simple tasks with clear, simple instructions. She would also benefit from learning appropriate coping strategies or being permitted to take additional short breaks while at work if mental health symptoms worsen while on the job. In summary, owing to the aggregate of supporting evidence, [Plaintiff] may have some difficulty dealing with normal pressures in a competitive work setting; but, at this time, appears capable of managing at least basic tasks and interactions.

(R. at 3274, 3276–77).

Of Dr. Rowland's opinion, the ALJ stated:

> [Dr. Rowland] indicated that the claimant has the ability to carry out and remember simple instructions; sustain concentration and persist in work-related activities at a reasonable pace, but her anxiety may provide her with challenges secondary to a lack of adequate coping skills; appears to have enough of an ability to maintain effective social interactions with supervisors, co-workers, and the public; and may have difficulty dealing with normal pressures in competitive work setting but appears capable of managing at least basic tasks and interactions. The examiner also noted that the claimant would benefit from be being permitted to take additional short breaks while at work if mental health symptoms worsen and work in an environment where she has limited contact with others. Overall, the examiner's opinion is generally consistent with the evidence as a whole to the extent is supports moderate limitation in the areas of mental functioning. The examiner's opinion is based on her clinical findings and the claimant's reported history. To the extent the examiner's opinion is consistent with the mental health limitations adopted herein, it is persuasive.

9

(R. at 31).

On these and other mental health treatment notes in the record, ALJ included the following limitations in Plaintiff's RFC: a restriction to performing "simple routine tasks consistent with unskilled work, with no fast pace or high production quotas, with no direct work with the general public, and only superficial interaction (defined as a short duration for a specific purpose) with co-workers and supervisors"; a restriction to performing "work with few detailed instructions, infrequent changes that are well-explained"; and a restriction to performing "low stress work, meaning no arbitration, negotiation, responsibility for the safety of others, or supervisory responsibility." (R. at 28). The ALJ also included a limitation that Plaintiff would be off task five percent of the workday. (*Id.*).

Plaintiff challenges this determination, arguing that the ALJ's formulated RFC is inconsistent with Dr. Rowland's opinions. (Doc. 10 at 14). Specifically, Plaintiff contends that the formulated RFC makes no limitation to a single trusted supervisor; allows for "few detailed instructions" rather than "simple instructions; and makes no allowance for additional breaks. (*Id.* at 15). The Undersigned needs to consider only the last of these.

As stated, Dr. Rowland twice opined that Plaintiff would "benefit from learning appropriate coping strategies or being permitted to take additional short breaks while at work if mental health symptoms worsen while on the job." (R. at 3276, 3277). The ALJ found Dr. Rowland's opinion persuasive to the extent her opinion was consistent with the mental health limitations adopted in the RFC. (R. at 31). Notably, the ALJ expressly acknowledged that Dr. Rowland opined Plaintiff would benefit from being "permitted to take additional short breaks while at work if mental health symptoms worsen[.]" (*Id.* (citing R. at 3276–77)). But the ALJ did not explain or discuss her exclusion of this limitation in Plaintiff's RFC, despite finding the opinion

10

persuasive and "generally consistent with the evidence as a whole to the extent [it] supports moderate limitation in the areas of mental functioning." (*Id.*). The Undersigned agrees with Plaintiff that this failure is a reversible error. *See, e.g.*, *Michelle B.*, 2025 WL 296321, at *5 ("[W]hen the ALJ finds a physician's opinion to be 'somewhat persuasive' and indicates that she has adopted the physician's opinions, she must incorporate the opined limitations or provide an explanation for declining to do so.").

The Commissioner points to Dr. Rowland's use of equivocal or uncertain language to discount this error. (*See, e.g.*, R. at 3277 (opining Plaintiff "*would* also benefit from learning appropriate coping strategies *or* being permitted to take additional short breaks while at work *if* mental health symptoms worsen while on the job" (emphasis added)). Certainly, courts have found the use of similar qualifying language unsupportive of specific functional limitations. *See, e.g.*, *Quisenberry v. Comm'r of Soc. Sec.*, 757 F. App'x 422, 434 (6th Cir. 2018); *Benson v. Saul*, No. 3:19-CV-02804, 2021 WL 1554219, at *5 (N.D. Ohio Jan. 11, 2021), *report and recommendation adopted sub nom. Benson v. Comm'r of Soc. Sec.*, No. 3:19 CV 2804, 2021 WL 804150 (N.D. Ohio Mar. 2, 2021). The trouble for the Commissioner is that the ALJ did not say this.

In both *Quisenberry* and *Benson*, the ALJ specified that the language employed by the provider was vague or speculative. *Quisenberry*, 757 F. App'x at 434 ("Second, as noted by the administrative law judge, Dr. Haduck's opinion is quite vague, and does not actually describe any specific functional limitations that would preclude the claimant from engaging in all work activity in perpetuity." (citation and internal quotation marks omitted)); *Benson*, 2021 WL 1554219, at *5 ("The ALJ is correct in noting that Dr. Wierwille's opinion frequently employs qualifying language such as "may" or "likely," which merely suggest that some limitations are possible."); *see also Tracy F. v. Comm'r of Soc. Sec.*, No. 2:23-CV-00188, 2023 WL 8614065 (S.D. Ohio Dec.

11

13, 2023) (noting the ALJ found Dr. Rowland's opinions only somewhat persuasive because she used speculative phrases), *report and recommendation adopted*, No. 2:23-CV-00188, 2024 WL 689322 (S.D. Ohio Feb. 20, 2024); *cf. Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 564 (6th Cir. 2014) (noting the ALJ provided the vocational expert with "more concrete information" than a report which opined possible restrictions, but finding no error because the hypothetical still accurately portrayed the plaintiff's limitations). Here, the ALJ never said that Dr. Rowland's explanations did not support the opined limitations because of speculative language. So, the Court is unable to accept the Commissioner's post hoc rationalization. *See, e.g., Williams v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-00235, 2021 WL 2456821, at *5 (S.D. Ohio June 16, 2021) (citing *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014)), *report and recommendation adopted*, No. 3:20-CV-235, 2021 WL 3035959 (S.D. Ohio July 19, 2021); *Salisbury v. Comm'r of Soc. Sec.*, No. 2:19-CV-5277, 2020 WL 5290536, at *7 (S.D. Ohio Sept. 4, 2020) (collecting cases), *report and recommendation adopted*, No. 2:19-CV-5277, 2021 WL 164256 (S.D. Ohio Jan. 19, 2021).

The Commissioner also argues that because the ALJ found Dr. Rowland's opinion persuasive only to a certain extent, and because the RFC is supported by substantial evidence, the ALJ was not under any obligation to adopt Dr. Rowland's opinion verbatim. (Doc. 11 at 7–12). This argument is similarly unavailing. While an ALJ is under no obligation to adopt an opinion verbatim, *Poe*, 342 F. App'x at 157, she must build a logical bridge between the evidence and her conclusions. *Davis v. Comm'r of Soc. Sec.*, No. 2:19-CV-265, 2019 WL 5853389, at *5 (S.D. Ohio Nov. 8, 2019). Here, the ALJ found Dr. Rowland's opinion persuasive "to the extent [her] opinion is consistent with the mental health limitations adopted herein." (R. at 31). But she did not discuss Plaintiff's short break needs anywhere else in her decision. (*See, e.g.,* R. at 30–31

12

(summarizing relevant mental health records and stating "[d]espite [Plaintiff's] allegations of debilitating mental health symptoms, [Plaintiff's] mental health records do not document significant functional limitations . . . . The undersigned generally finds that the limitations assessed by the prior ALJ remain applicable [with two additions]. The record does not contain evidence of abnormal findings sufficient to document any further limitations.")). This exclusion leaves Plaintiff guessing why an allowance for additional short breaks—which the ALJ expressly acknowledged three sentences before—was not consistent with the adopted mental health limitations in the RFC. Because the ALJ failed to build a logical bridge between the evidence and her conclusion, the Undersigned cannot meaningfully review her analysis. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (noting that an ALJ's decision "must include a discussion of 'findings and conclusions, and the reasons or basis therefore, on all the material issues of fact, law, or discretion presented on the record.'" (quoting 5 U.S.C. § 557(c)(3)(A))); *Davis*, 2019 WL 5853389, at *5.

The error is not harmless. At the disability hearing, Plaintiff's attorney asked the vocational expert if "needing additional breaks beyond the normal breaks [would] have an impact on the ability to maintain the full-time employment by itself." (R. at 134). The vocational expert answered that "there would be no allowance in [the jobs the vocational expert testified a hypothetical person with Plaintiff's age, education, background, and work experience could perform] for unskilled [workers] who needed extra breaks." (*Id.*). Consequently, if the ALJ found that substantial evidence supported a need for additional short breaks, the outcome of this case may have been all together different. For all these reasons, remand is warranted.

As a final note, Plaintiff alleges two more errors in the ALJ's treatment of Dr. Rowland's opinion and an error in the ALJ's consideration of her non-severe back impairment at step two.

13

The Undersigned finds it unnecessary to decide these other issues. Because the Undersigned recommends remanding this matter, it need not determine whether the RFC was deficient in other ways or whether the ALJ's step two analysis was sufficient. On remand, the ALJ remains free to address these other alleged errors.

In sum, the ALJ insufficiently explained her exclusion of Dr. Rowland's opined limitation that Plaintiff would need short breaks if her mental health symptoms worsened while at work. Remand is appropriate to allow for proper consideration and explanation of Dr. Rowland's opinion.

## IV. CONCLUSION

Based on the foregoing, the Undersigned **RECOMMENDS** that the Court **SUSTAIN** Plaintiff's Statement of Errors (Doc. 10), **REVERSE** the Commissioner's non-disability finding, and **REMAND** this case to the Commissioner and Administrative Law Judge under Sentence Four of § 405(g).

Date: March 12, 2025  /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or

modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).